

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable E. O. Siecke, Director
Texas Forest Service
Agricultural & Mechanical College of Texas
College Station, Texas

Dear Sir:

Opinion No. O-4012
Re: Under House Bill 543, what
powers as peace officers will
the designated employees of
the Texas Forest Service have
when appointed as such?

This is to advise that we have given careful consideration to your request for our opinion upon the question as stated above.

The pertinent part of the act of the Legislature known as House Bill No. 543 of the Forty-seventh Legislature is contained in Section 1 thereof, reading as follows:

"Section 1. That Article 2613, Revised Civil Statutes of Texas, 1925, be amended by adding the following paragraph to be known as Section 10a:

"'10a. The State Forester may, when the enforcement of the provisions of this Act requires, name the following of his employees: Two District Foresters, four Division Patrolmen, and four Patrolmen, as peace officers, whose duties and powers shall not exceed the duties of the State Forester as set out in Section 10 hereof. The necessity of such appointments shall be certified to and approved by the board of directors.'" (Underscoring ours)

Section 10, Article 2613, Revised Civil Statutes of Texas, 1925, relates to the appointment, qualifications,

Honorable E. O. Siecke, Director, Page 2

compensation and duties of the State Forester, and in parti-
cular contains this language:

". . . He shall take such action as may
be deemed necessary by said board to prevent
and extinguish forest fires, shall enforce
all laws pertaining to the protection of forest
and woodlands, and prosecute for any violation
of such laws; . . ." (Underscoring ours)

The penal provisions of our statutes relating to
the protection of "forest and woodlands" are contained in
Chapter Two of Title 17 of the Revised Criminal Statutes of
Texas, 1925. (See Articles 1517 to 1530, Vernon's Annotated
Penal Code.)

The specific articles deemed applicable are 1321,
1329 and 1330. Article 1321 relates to wilful or negligent
burning woodland or prairie; 1329 is directed toward the
prevention of escaping sparks from locomotives, engines and
boilers, giving the State Forester or his aides inspection
privileges in addition to providing punishment for viola-
tions; while Article 1330 prohibits firing of forests or
cut-over lands. In each instance, the penalties provided
are such as to constitute the offense, if and when commit-
ted to be a misdemeanor as distinguished from a felony.

In our opinion No. 0-1454, a copy of which is en-
closed for your information, there is a discussion of the
power and duty of every peace officer to enforce all the
laws generally, although its specific application is to the
load limit and highway laws.

In that opinion it is correctly said that the Legis-
lature has seen fit to enact many different penal laws under
the state police power; that in instances the lawmakers have
recognized that there are certain classes of officers properly
trained and equipped to do the preliminary work in making a
case and that these instances, in effect, act as limitations
upon the power of many peace officers.

It is evident to us that it was not the intention
of the Legislature in enacting House Bill No. 543 to bestow
upon the State Forester or the "District Foresters, Division
Patrolmen and Patrolmen" to be named by the State Forester
under provisions of the bill, general powers as "peace offi-

cers" to enforce all of our criminal laws generally. The underscored portion of the act, supra, makes it clear that the power and duties of such appointees shall not exceed the duties of the State Forester, i.e., "to enforce all laws pertaining to the protection of forest and woodlands".

The right of such officers to make arrests in their official capacity is therefore limited to violations of laws affecting the protection of forests and woodlands. The right to arrest with a warrant would be restricted to such violations; the right to arrest without warrant, since there is no specific statutory provision otherwise, would be limited to such violations occurring within their presence and view, and even then, such arrest without warrant would be further limited to felonies and misdemeanors constituting an "offense against the public peace".

In the case of Head v. State, 131 Tex. Cr. R. 96, 96 S. W. (2d) 981, the Court of Criminal Appeals reversed the case because it appeared appellant refused the request of a constable to weigh his motor truck, it appearing that authority to weigh such trucks had been conferred upon license and weight inspectors of the State Highway Department only. The court said the case did not come within the general provisions of the Code of Criminal Procedure, Articles 212 and 213, vesting peace officers with the right to arrest without warrant if an offense was such as to constitute a "breach of the peace" in the officer's presence; that the violation in the case did not constitute such a breach.

With reference to the term "breach of the peace", we quote the following language by Judge Hawkins in the motion for rehearing in the Head case:

"We quote from Corpus Juris, vol. 9, pp. 386 to 388, the definition of a breach of the peace:

"'The term "breach of the peace" is generic, and includes all violations of the public peace or order, or decorum; in other words, it signifies the offense of disturbing the public peace or tranquillity enjoyed by the citizens of a community; a disturbance of the public tranquillity by any act or conduct inciting to violence or tending to provoke or excite others to break the peace; a disturbance of public order by an act of

Honorable E. O. Siecke, Director, Page 4

violence; or by any act likely to produce violence, or which, by causing consternation and alarm disturbs the peace and quiet o of the community. By "peace", as used in this connection, is meant the tranquillity enjoyed by the citizens of a municipality or a community where good order reigns among its members. Breach of the peace is a common-law offense. It has been said that it is not a specific offense, yet it may be, and at times is, recognized as such by statute or otherwise; and only when so regarded will it be considered in this article.

"'The offense may consist of acts of public turbulence or indecorumiin violation of the common peace and quiet, of an invasion of the security and protection which the laws afford to every citizen, or of acts such as tend to excite violent resentment or to provoke or excite others to break the peace. Actual or threatened violence is an essential element of a breach of the peace. Either one is sufficient to constitute the offense. Accordingly, where means which cause disquiet and disorder, and which threaten danger and disaster to the community, are used, it amounts to a breach of the peace, although no actual personal violence is employed. Where the incitement of terror or fear of personal violence is a necessary element, the conduct or language of the wrongdoer must be of a character to induce which a condition in a person of ordinary firmness.'

"Our own statutes and the cases decided thereunder sustain the idea that to be a breach of the peace the act complained of must be one which disturbs or threatens to disturb the tranquillity enjoyed by the citizens. See articles 473 to 482, Penal Code (as amended (Vernon's Ann. P. C. arts. 473-482) ); Lee v. State, 45 Tex. Cr. R. 94, 74 S. W. 28. . . ."

For other cases upon the subject of "breach of the peace" or "offense against public peace" see: Waltrip v.

State, 134 Tex. Cr. R. 202; 114 S. W. (2d) 555; Weeks v. State, 132 Tex. Cr. R. 524, 106 S. W. (2d) 275; King v. State, 132 Tex. Cr. R. 200, 103 S. W. (2d) 754.

It is evident to us from what has been said by our courts that the question of whether the offenses of which your Forest Officers should take cognizance would constitute "offenses against the public peace" would be a factual question depending upon the particulars in each specific violation. If measured by the principles enunciated in the Head case, supra, there may be many instances where a violation of the articles of the Penal Code, cited earlier in this opinion, would come within the meaning of the phrase; others may not. We know of no means to apply a hard, fast, unvarying rule upon the violations referred to, especially since a lengthy search has availed no precedents for our guidance.

Trusting the above will prove of some benefit to you, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED OCT 10, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

By

Benjamin Woodall
Assistant

BW:GO

